# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RAYMOND JOSEPH BABEL, #468999,

    Petitioner,

v.                                           Case No. 2:06-CV-12712

KENNETH ROMANOWSKI,

    Respondent.
                                                     /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS*

Petitioner Raymond Joseph Babel is a state inmate incarcerated at Hiawatha Correctional Facility in Kincheloe, Michigan. Petitioner was previously incarcerated at Parr Highway Correctional Facility in Adrian, Michigan, where Kenneth Romanowski was the warden. Petitioner was convicted of first-degree home invasion, Mich. Comp. Laws §750.110a(2), and was sentenced to forty-eight months to twenty years imprisonment. He filed a petition, through counsel, for a writ of habeas corpus under 28 U.S.C. §2254. For the reasons stated below, the court will deny the petition.

## I. BACKGROUND

Petitioner was tried in Macomb County, Michigan. On February 20, 2004, a circuit court jury found Petitioner guilty of first-degree home invasion. The convictions arose from Petitioner's alleged unlawful entry into the home of Gene Barnard. Although Petitioner admits that Mr. Barnard is one of his neighbors, he denies any confrontation between him and Mr. Barnard prior to the alleged home invasion. (Tr., Vol. III, 2/20/04,

pg. 79.) Further, he denies entering Mr. Barnard's home in March 2003. *Id.* The remaining witnesses testimony[1] is best reflected in the version of events as presented by the Michigan Court of Appeals. The state appellate court set forth the underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), as follows:

> According to the complainant [Gene Barnard], days before the home invasion, he was backing his motorcycle out of his driveway when defendant's van nearly struck him. The complainant and defendant had a brief verbal altercation, and the complainant continued driving to a nearby gas station. The complainant testified that defendant followed him to the gas station, where the two men again exchanged hostile words. According to the complainant, on March 25, 2003, at about 2:00 a.m., Destremps knocked on his front door and told him that someone was tampering with his motorcycle in the garage. The complainant closed the front door, and went out a rear door into his garage, where defendant and Destremps confronted him. The complainant ran back into his house through a sliding glass door. The complainant, his wife, and Destremps testified that, as the complainant attempted to hold the door shut, the two men pulled and pounded on the door, while threatening to harm the complainant. After the complainant released the door and ran, defendant and Destremps entered the house. The complainant ran out the front door. The complainant's wife testified that after advising defendant and Destremps that the complainant was no longer in the house they left and filed to defendant's house.
>
> Destremps testified at defendant's trial, and admitted that he and defendant went to the complainant's house to scare him and "pick a fight." Destremps indicated that, before the incident, he, defendant, and defendant's sister had consumed alcohol for several hours while defendant repeatedly claimed that the complainant had attacked him after a traffic incident. Eventually, he and defendant went to the complainant's house, taunted him, and followed him into his house. After the complainant's wife told them to leave, they returned to defendant's house. Destremps later determined that defendant lied about being attacked by the complainant.

---

[1] The remaining witnesses included the alleged victim, Gene Barnard; his wife, Laurie Barnard; and David Destremps, the individual who testified to having entered Mr. Barnard's home along with the Petitioner.

> Defendant testified in his own behalf and denied that he accompanied
> Destremps to the complainant's house.

*People v. Babel,* No. 255018, 2005 WL 1229737, *1 (Mich. Ct. App. May 24, 2005).

Petitioner filed an appeal of right and raised the following claims:

> I. The trial court abused its discretion and erred reversibly in refusing Defendant's request to retain new counsel.
>
> II. The trial court abused its discretion and severely prejudiced the Defendant by denying his request for an adjournment which prevented him from presenting a witness in support of his alibi defense.
>
> III. Defendant was denied a fair trial by the admission of irrelevant, inadmissible propensity evidence that a responding officer had past encounters with the Defendant.
>
> IV. Defendant was denied effective assistance of counsel and a fair trial by his attorney's failure to present his alibi defense/produce alibi witnesses at trial, and failed to produce a witness to rebut the testimony of David Destremps due to the attorney's failure to issue subpoenas.
>
> V. Where the prosecutor claimed that Defendant committed the home invasion on the complainant as part of an assault he committed against him during an earlier "road rage" incident, the trial court violated Defendant's due process right to present a defense by barring him from introducing evidence that the complainant was the aggressor against the Defendant during the earlier incident, where offered to show a motive for the complainant to fabricate the charges, and to support the defense theory that the complainant had initially assaulted Defendant, which was contrary to his trial testimony.

Brief for Appellant at (i), *People v. Babel,* No. 255018, 2005 WL 1229737 (Mich. Ct. App. May 24, 2005).

The Michigan Court of Appeals affirmed Petitioner's conviction. *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme court and raised the same issues as those presented before the Michigan Court of Appeals. *People v. Babel,* 474 Mich. 938; 706 N.W.2d 16 (2005). Petitioner's application for leave was denied. *Id.* Petitioner now seeks a writ of habeas corpus asserting the following

claims:

> I. Petitioner was denied effective representation by virtue of his attorney's failure to present his alibi defense or produce alibi witnesses at trial, and by his failure to produce a witness to rebut the testimony of David Destremps due to the attorney's neglect in failing to issue subpoenas, and was denied counsel of choice when the trial court denied Petitioner's request to retain new counsel, thereby denying him due process of law pursuant to U.S. Const. Ams V, VI, XIV.
>
> II. The trial court denied Petitioner's due process of law pursuant to U.S. Const Ams V, XIV in permitting the admission of irrelevant, inadmissible propensity evidence that a responding officer had past encounters with the Petitioner.
>
> III. The trial court denied Petitioner due process of law pursuant to U.S. Const Ams V, XIV by denying an adjournment, which prevented him from presenting a witness in support of his alibi defense.
>
> IV. Where the prosecutor claimed that Petitioner committed the home invasion on the complainant as part of an assault he committed against him during an earlier "road rage" incident, the trial court denied Petitioner due process of law pursuant to U.S. Const Ams V, XIV and violated Petitioner's due process right to present a defense by barring him from introducing evidence that the complainant was the aggressor against him during the earlier incident, where offered to show a motive for the complainant to fabricate the charges, and to support the defense theory that the complainant had initially assaulted Defendant, which was contrary to his trial testimony.

(Pet., ¶ 5.)

Respondent has filed an answer to the petition, asserting that Petitioner's claims do not involve an objectively unreasonable application of clearly established federal law. Petitioner has filed a reply brief.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs the court's habeas corpus review of state court decisions. Petitioner is entitled to the writ of

4

habeas corpus if he can show that the state court's adjudication of his claim on the merits:

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

### III. DISCUSSION

## A. Ineffective Assistance of Counsel

### 1. Alibi Witness

Petitioner claims that trial counsel was ineffective for failing to call Petitioner's sister, Lynn Zielinski, as an alibi witness. The Michigan Court of Appeals rejected Petitioner's claim:

> The failure to call a supporting witness does not inherently amount to ineffective assistance or counsel, and there is no unconditional obligation to call or interview every possible witness suggested by a defendant. A trial counsel's decisions concerning what witnesses to call, and what evidence to present are matters of trial strategy. In order to overcome the presumption of sound trial strategy, the defendant must show that his counsel's failure to call [the] witnesses deprived him of a substantial defense that would have affected the outcome of the proceeding.
>
> Defendant has failed to demonstrate how the proffered witnesses were invaluable to his defense or how their testimony would have affected the outcome of the trial. In specific, defendant contends that if called Zielinski would have testified that defendant was at home at the time of the incident. But defendant has not overcome the presumption that defense counsel's decision not to call Zielinski was a matter of strategy. In fact, at trial, defense counsel noted that, although defendant wanted to call Zielinski, her testimony would have been insignificant and "quite damaging" to the case. This Court will not second-guess counsel in matters of trial strategy. The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel.

*Babel,* 2005 WL 1229737 at *4 (internal citations and quotations omitted).

To show a denial of the effective assistance of counsel under federal constitutional standards, a petitioner must satisfy a two-prong test. *Strickland v. Washington,* 466 U.S. 668 (1984). First, a petitioner must prove that counsel's performance was deficient. *Id.* at 687. This requires a showing that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* Second, the petitioner must establish that the deficient

6

performance prejudiced the defense.  *Id.*  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*.

With respect to the first prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance"  *Id.* at 690.  The court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and exercised reasonable professional judgment in all significant decisions.  *Id.* at 690.

To satisfy the second prong, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996) .

The Michigan Court of Appeals' adjudication of Petitioner's claim was not an unreasonable application of clearly established federal law.  Under *Strickland,* the court presumes that decisions by counsel as to whether to call or question witnesses are matters of trial strategy.  *See Hutchinson v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002).
Here, Petitioner's counsel stated:

> Mr. Awada: Your Honor, in regards to the defense as well, there were several witnesses on an alibi notice of alibi defense.  It's my feeling, as trial counsel, that I'd like to move to be allowed to strike those witnesses.
>
> The Court: Which witnesses?

7

>    Mr. Awada: The alibi witness.
>
>    Ms. Andary: The People have no objection.
>
>    Mr. Awada: And the People — thank — I thank the People. However, the — defendant here is vehemently demanding that I call this witness and he's putting me in a —
>
>    The Court: (Interposing) Well, that's I guess – it's a matter of – between the two of you, but –
>
>    Mr. Awada: (Interposing) **I believe it's a matter of trial strategy**, your Honor, and I want to state for the record that **I don't believe this woman will have anything good to offer**. And I think for the record outside the presence of the jury, that **if she gave testimony that it could be quite damaging to the defendants**.

(Tr., Vol. III, 2/20/04, pp. 70-71) (emphasis added.)

Petitioner's counsel was not ineffective in failing to call Lynn Zielinski, where counsel was aware of her existence, considered her testimony's usefulness, and chose to exclude her as an explicitly stated trial strategy. In addition to trial counsel's statements, there is a presumption, not overcome on this record, that counsel's decision to omit testimony is part of trial strategy. See *Cathron v. Jones* 77 Fed. App'x 835, 841-42 (6th Cir. 2003). Further, Petitioner testified on his own behalf, declared his innocence, and now fails to offer evidence that Ms. Zielinski's testimony would have enhanced his alibi defense beyond averring Ms. Zielinkski "would have testified favorably for the Petitioner." (Pet. at 13.) Thus, the Michigan Court of Appeals' rejection of Petitioner's ineffective assistance of counsel claim was not unreasonable. See *Chegwidden v. Kapture,* 92 Fed. App'x 309, 311 (6th Cir. 2004).

### 2. Rebuttal Witness

Petitioner next contends that his trial counsel was ineffective in failing to

8

introduce rebuttal testimony through Petitioner's previous attorney, Jerrod Fleming. The Michigan Court of Appeals also rejected Petitioner's claim as to this witness and stated as follows:

> Defendant also contends that, if called, Fleming would have testified that, during a pretrial interview, Destremps stated that he was so intoxicated on the night of the incident that he could not remember what happened. But Destremps' level of intoxication was placed before the jury. Destremps himself, testified that, on the evening of the incident, he drank beer and whisky for "a couple of hours," he drank a "lot of alcohol," and he had "so much to drink." Destremps acknowledged that, because of his drinking, his memory was "fuzzy" and he could not remember everything. Thus, the proposed testimony would have been cumulative and, given that the complainant and his wife positively identified defendant, would have been of little significance in this case. Consequently, defendant has failed to overcome the presumption that defense counsel, as a matter of trial strategy, reasonably refrained from presenting this cumulative testimony.

*Babel,* 2005 WL 1229737 at *4.

The court agrees. "[S]uch cumulative evidence does not support substantive grounds for an ineffective assistance of counsel claim." *Jones v. Bradshaw,* 489 F.Supp.2d 786, 837 (N.D. Ohio 2007). Further, the court agrees with the court of appeals' analysis of the second *Strickland* prong, requiring that an ineffectiveness of counsel showing include proof that the deficient performance prejudiced the defense:

> Moreover, it is unlikely that defense counsel's failure to call the potential witnesses prejudiced defendants, i.e., denied him a substantial defense. As previously indicated, there was compelling evidence presented at trial, including the detailed testimony of the complainant and his wife. Accordingly, defendant has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged failure to call the proposed witnesses, the result of the proceeding would have been different.

*Babel,* 2005 WL 1229737 at *5 (internal citation omitted).

### B. Failure to Grant an Adjournment

### 1. Retain New Counsel

Petitioner next argues that the trial court erred when it failed to grant Petitioner's request for an adjournment of trial to retain new counsel. Due to Petitioner's dissatisfaction with his appointed attorney, Petitioner made a trial-day request for an adjournment so that he could retain new trial counsel. The Michigan Court of Appeals disagreed with Petitioner's position and stated:

> Although defendant was asserting the constitutional right to be represented by counsel of his choice, he did not appear to have a legitimate reason for wanting to replace his appointed attorney. Waiting until the day of trial to request new counsel is suspect in this case. Further, defendant's request that defense counsel obtain an adjournment by any means and the fact that the attorney he sought to retain had withdrawn three months earlier, supports a finding that the request for an adjournment was a delay tactic. Additionally, defendant has not demonstrated any resulting prejudice. Awada was familiar with the case, which was relatively straightforward, and effectively represented defendant. Consequently, the trial court did not abuse its discretion in denying defendant's request for an adjournment to retain different counsel.

*Id.* at *2.

In so finding, the court of appeals was ostensibly referencing the following exchange on the day of trial:

> Mr. Awada:  . . . There's a matter we need to briefly address on the record.
>
> The Court: All right.
>
> Mr. Awada: Mr. Babel has indicated to me his displeasure with my representation this morning.
>
> **The Court:** (Interposing) There's no adjournment, Mr. Babel. **This is a trial date. We've gone through this how many times?** You are not the first lawyer, you're the second.

Mr. Awada: Yes, your Honor.

The Court: We're ready to try the case. We've got a jury upstairs ready to go.

Mr. Awada: Mr. Babel has indicated that he wanted to inform the court, though, of what his issue is with counsel.

The Court: That's – that's – go on, Mr. Babel.

Mr. Babel: Oh, excuse me, your Honor?

The Court: Go on. What do you want to say? This is your time to speak.

**Mr. Babel: Well, I wanted to hire Jarrod Fleming, but –**

**The Court: (Interposing) You had Mr. Fleming as your lawyer.**

Mr. Babel: I know, he was –

The Court: (Interposing) You fired him.

Mr. Babel: No, I didn't.

The Court: Or you wouldn't pay him. That's what it was.

Mr. Babel: It was a financial thing and I've recently come into some money that I can retain him. And he knows this case like the back of his hand and I feel I would get much better representation from Jarrod Fleming.

The Court: Well, I'm sorry, sir, this is the date and time for trial. We're going on and we're trying the case today.

Mr. Babel: All right.

The Court: You had Mr. Fleming, you couldn't afford him. If you couldn't afford counsel you were entitled to court-appointed. You hired Mr. Awada –

Mr. Awada: (Interposing) I'm court-appointed.

The Court: Oh, you are court-appointed?

Mr. Awada: Yes, your Honor.

11

The Court: All right.

**Mr. Awada: I'm fully prepared to try this case today.**

The Court: Yes.

* * * *

Mr. Awada: . . . [D]efendant . . . indicated to me he didn't care what I had to do, but get an adjournment today and offered me a hundred dollars to make something up. And I don't feel that was proper. I think it was outside the rules of how to proceed in these matters and I wanted to say it to the court that I, in no way proceeded accordingly. He did say that in the courtroom with an open court.

The Court: So it wasn't a confidential communication.

Ms. Andary: No, your Honor.

Mr. Awada: I believe the complainant witness himself, was present in the courtroom.

* * * *

Mr. Babel: (Interposing) I was just saying if there was extra, I'd pay the extra.

(Tr., Vol. I, 2/18/04, pp. 3-6.)

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend, VI. This constitutional right is applicable to the states through the Fourteenth Amendment. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Gideon v. Wainwright ,* 372 U.S. 335, 344-45 (1963)). "A criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Id.* (quoting *Powell v. Alabama,* 286 U.S. 45, 53 (1932)). However, "[n]ot every restriction of counsel's time or

opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *See Chambers v. Maroney,* 399 U.S. 42, 53-54 (1970). "Trial judges necessarily require a great deal of latitude in scheduling trials . . . Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon the expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964)).

A motion to substitute counsel, based upon the defendant's dissatisfaction with his counsel previously appointed, is within the sound discretion of the trial court. *United States v. White,* 451 F.2d 1225, 1226 (6th Cir. 1971). The Sixth Circuit cites four factors to consider when assessing a trial court's exercise of discretion in denying a continuation of trial to obtain new trial counsel : "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest." *United States v. Mack,* 258 F.3d 548, 556 (6th Cir. 2001).

In this case, the request for substitution of counsel and for an adjournment were untimely, as both issues were raised on the day of trial. Untimeliness has been found when such motions were made the day before trial, *United States v. Jennings,* 83 F.3d 145, 148 (6th Cir. 1996), and as far out as two weeks before trial, *United States v. Williams,* 176 F.3d 301, 314 (6th Cir. 1999). As reflected in the record, the trial court made an adequate inquiry into the crux of Petitioner's adjournment and substitution of

13

counsel issues, and trial counsel was allowed an adequate opportunity to address the issues as well. Accordingly, the court finds that the state court did not unreasonably apply federal law in reaching its conclusion to deny the adjournment and proceed to trial with Petitioner's appointed counsel.

### 2. Present an Alibi Witness

Petitioner next argues that the trial court erred when it failed to grant his continuance request so that he could present an alibi witness, his sister, Lynn Zielinski. The Michigan Court of Appeals did not find Petitioner's argument persuasive, stating:

> We also reject defendant's claim that the trial court abused its discretion by denying his request for an adjournment in order to call his sister, Lynn Zielinski, who was not present in the courtroom. Defendant failed to move the court for a continuance, and it is established that a trial court has no duty to grant a continuance on its own. Consequently, this claim does not warrant reversal.

*Babel,* 2005 WL 1229737 at *5 (internal citations omitted).

The court agrees. The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State,* 388 U.S. 14, 19 (1967). "When a denial of a continuance forms the basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Bennett v. Scroggy,* 793 F.2d 772, 774-75 (6th Cir. 1986).

In this case, Petitioner admits that there was no actual request for a continuance, stating, "defense counsel may not have actually requested an adjournment . . . ." (Pet. at 29.) The trial court could not have abused its discretion in its denial of a continuance because there was no request to reject. Further, Petitoner has not shown the denial of

adjournment, when his witnesses did not appear in court, was arbitrary or fundamentally unfair. *Bennett*, 793 F.2d at 774-75. Accordingly, habeas relief is not warranted as to this issue.

### C. Admissibility of Propensity Evidence & Procedural Default

Next, Petitioner argues that propensity evidence was elicited from Officer Mitchell Berlin, resulting in prejudice to Petitioner and an unfair trial. The Michigan Court of Appeals rejected this claim:

> Defendant failed to timely object to the testimony at trial; thus we review this unpreserved issue for plain error affecting defendant's substantial rights . . . Contrary to defendant's suggestion, the officer's testimony did not amount to "inadmissible propensity evidence" by implying that the officer had past encounters with defendant apart from this incident. Further, there was no indication at trial that defendant had a prior criminal record, and any inference that a prior record existed based on the prosecutor's question and the witness' response is tenuous. Consequently, defendant has failed to demonstrate plain error and, thus this claim does not warrant reversal.

*Babel,* 2005 WL 1229737 at *3 (internal citations omitted).

The court first notes that Petitioner is in procedural default relative to the propensity evidence issue. The last state court to issue an opinion addressing Petitioner's propensity evidence claim held that the claim was not preserved for review because there was no challenge relative to this claim before the trial court. *Id.* Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Though Petitioner's claim is procedurally defaulted, the procedural default doctrine is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Thus, while the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Ferensic v. Birkett*, 451 F.Supp.2d 874, 887 (E.D. Mich. 2006). The court deems it more efficient in this case to proceed directly to the merits of Petitioner's claim.

Officer Berlin's testimony made references to having "dealings with [Petitioner] in the past." (Tr., Vol. III, 2/20/04, pp. 15-16.) Petitioner asserts this language is both irrelevant and demonstrates prejudicial propensity evidence, the admission of which resulted in Petitioner receiving an unfair trial. "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders,* 34 F.3d 352, 357 (6th Cir. 1994) (citing *Fuson v. Jago,* 773 F.2d 55, 59 (6th Cir. 1985)). Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," does it violate due process and warrant habeas relief. *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).

The Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States,* 493 U.S. 342, 352-53 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the

16

Federal Rules of Evidence, *see Huddleston v. United States,* 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. Therefore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad [sic] acts evidence." *Bugh,* 329 F.3d at 512. Consequently, there is no binding precedent for the court to find the state court decisions be deemed "contrary to" under 28 U.S.C.§2254(d)(1). *Id.* at 513. Thus, Petitioner's challenge to the admission of the perceived propensity evidence does not warrant habeas relief.

### D. Witness Exclusion

Finally, Petitioner states that the trial court erred when it excluded the testimony of Petitioner's sixteen-year-old son. His son would have allegedly testified that Mr. Barnard assaulted Petitioner on a previous occasion. Petitioner's purpose for eliciting this testimony was to show Mr. Barnard' "evidenced a motive to fabricate the charges and would have helped the jury understand how [Mr. Barnard] might come to have identified the Defendant as a perpetrator." (Pet. at 35.) Petitioner claims that the exclusion of this testimony compromised his right to present a defense. The Michigan Court of Appeals rejected this argument, stating:

> We agree with the trial court that the proffered evidence was not relevant. As noted by the trial court, the alleged prior attack was not a defense to the charged offense. Furthermore the proffered testimony was contradictory to defendant's own trial testimony that "[n]othing" happened between him and the complainant before the alleged home invasion. Additionally, the proffered evidence could have easily supported an inference that, because the complainant had physically attacked defendant in the past defendant went to the house to seek revenge. In short, defendant has failed to persuasively demonstrate how the proposed testimony was relevant and helpful to his case. Also, the inferences

17

> defendant was trying to draw were tenuous at best, and may have confused the issues.
>
> We also reject defendant's claim that the trial court's evidentiary ruling deprived him of the constitutional right to present a defense. The trial court's ruling did not amount to a blanket exclusion of all evidence challenging the witnesses' credibility, or otherwise limit defendant's opportunity to present a defense. Moreover, contrary to defendant's implication, evidentiary rulings do not ordinarily rise to the level of a constitutional violation. Therefore, we are not persuaded that the trial court abused its discretion by excluding the challenged evidence.

*Babel,* 2005 WL 1229737 at *6 (internal citations omitted).

The court agrees. "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain factors such as unfair prejudice, confusion, of the issues, or potential to mislead the jury." *Holmes v. South Carolina,* 547 U.S. 319, 326 (2006). Even when a court erroneously excludes defense evidence, "[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." *United States v. Blackwell,* 459 F.3d 739, 753 (6th Cir. 2006) (alterations in original).

There are no details in the record regarding the circumstances under which the alleged attack by Mr. Barnard took place. The trial court noted that even had the alleged attack occurred, "[t]hat's not a justification to break into somebody's home and attack." (Tr., Vol. III, 2/20/04, p. 87.) Further, Petitioner's son was not a witness to the any of the events surrounding the home invasion. Finally, defense counsel indicated on

18

the record that he was concerned about Petitioner's's son perjuring himself and any legal protections, such as independent counsel, the son may have needed as a participant in the criminal matter (*Id.*, p. 83-88.) For these reasons, the court finds that the state court's decision, that Petitioner was not deprived of his right to present a defense, was objectively reasonable and thus does not warrant habeas relief.

### E. Certificate of Appealability & *In Forma Pauperis*

The court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus, or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is in the best position to make the COA determination. *See id.* at 901.

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show [ ] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court finds that reasonable jurists would not debate the court's conclusion that Petitioner does not present any claims upon which habeas relief may be granted. Therefore, the court denies a certificate of appealability.

Lastly, the court concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal of the court's decision would be frivolous.

19

*See* Fed. R. App. P. 24(a). Accordingly, the court will also deny leave to proceed on appeal *in forma pauperis.*

### IV. CONCLUSION

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States.

Accordingly,

IT IS ORDERED that the "Petitioner for Writ of Habeas Corpus" [Dkt. #1] is DENIED.

                                                  s/Robert H. Cleland  
                                                ROBERT H. CLELAND  
                                                UNITED STATES DISTRICT JUDGE

Dated: September 30, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 30, 2008, by electronic and/or ordinary mail.

                                                s/Lisa Wagner  
                                                Case Manager and Deputy Clerk  
                                                (313) 234-5522